[No. C066059. Third Dist. Mar. 23, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
KESH MAHARAJ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I through VI.

**COUNSEL**

Charles M. Bonneau, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Daniel B. Bernstein and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HOCH, J.**—A jury convicted defendant Kesh Maharaj of multiple counts of lewd and lascivious conduct involving the same victim, a young girl under the age of 14 years. In count one, defendant was convicted of forcible lewd and lascivious act on a child under the age of 14 years (Pen. Code, § 288,

subd. (b)).[1] In counts two, three, and four, defendant was convicted of aggravated sexual assault on a child under the age of 14 years (§ 269). In counts five through thirteen, defendant was convicted of lewd and lascivious touching of a child under the age of 14 years (§ 288, subd. (a)). Count fourteen, alleging criminal threat (§ 422), was dismissed upon motion of the People after the jury was unable to agree on the charge. In counts fifteen and sixteen, defendant was convicted of exhibiting harmful material to a minor (§ 288.2, subd. (a)). The trial court sentenced defendant to a determinate term of 33 years four months in state prison in addition to an indeterminate term of 45 years to life.

On appeal, defendant focuses on counts one through four. Defendant contends (1) the trial court erred in denying his motion to remove a juror who expressed animosity toward defense counsel and fell asleep during the first day of trial, (2) insufficient evidence supports defendant's conviction of aggravated sexual assault as alleged in count four, (3) his due process rights were violated for lack of notice of the conduct for which he was charged in count four, (4) the jury should have been instructed on the lesser included offense of nonforcible lewd act (§ 288, subd. (a)) in addition to the forcible lewd act on a child (§ 288, subd. (b)) charged in count one, (5) the trial court erred in denying his motion for new trial based on newly discovered evidence in the form of testimony by a friend of the victim's mother, (6) the court failed to properly state the reasons for imposing consecutive sentences for counts two through four, and (7) the court erroneously imposed consecutive sentences for his four forcible sex offenses in counts one through four in violation of section 667.6, subdivision (c).

For the following reasons, we affirm the judgment. First, with regard to the juror removal issue, the record supports the trial court's conclusion that the juror did not need to be removed for bias or inability to perform the functions of a juror. Second, there is sufficient evidence to support defendant's conviction of aggravated sexual assault alleged in count four. Third, defendant's claimed lack of notice of the sexual penetration charge in count four also fails because defendant was put on notice of the facts giving rise to count four's allegation through the victim's testimony at the preliminary hearing. Fourth, defendant's contention that the jury should have been instructed on the lesser included offense of nonforcible lewd act in addition to the forcible lewd act charged in count one must be rejected because there is no evidence to support a nonforcible lewd act instruction. Fifth, the trial court did not err in denying the motion for new trial because defendant failed to demonstrate that the witness was unavailable. Sixth, defendant failed to object to the imposition of consecutive sentences for counts two, three, and four on the grounds that the trial court failed to state the requisite findings. Therefore, this issue has been

---

[1] Undesignated statutory references are to the Penal Code.

forfeited. Seventh, the trial court properly imposed consecutive sentences for counts one through four based on the fact that the four counts are included in section 667.6, subdivision (e), requiring mandatory consecutive sentences for each of defendant's four forcible sex offenses.

## FACTUAL AND PROCEDURAL HISTORY

### Prosecution Evidence

When J.[2] was 12 years old, defendant regularly picked her up from school and took her to his house in Stockton. Defendant is a distant relative of J.'s mother. J. refers to defendant as "Uncle."

Defendant told J.'s father that she was going to babysit defendant's son. The first time she went to defendant's house, J. "felt weird" and did not want to go back. However, her father made her return.

One day when defendant's son was still at school, defendant lured J. upstairs with the promise of a gift. Once they were inside the bedroom, defendant locked the door, turned on the television, and told J. to lie down on the bed. Defendant pushed her down on the bed, then "laid beside [her] and started dry humping [her], like, on the side." J. recounted that defendant "started, like, humping me on my clothes. Like, I was wearing my clothes on. He had his clothes on, too, but he like . . . [¶] . . . [¶] . . . was going back and forth" with his "private part." When defendant was done, he went to the bathroom and then left to pick up his son.

Defendant molested J. again while she was still 12 years old. As before, defendant enticed J. to the upstairs bedroom with the false promise of a gift. Defendant again "dry humped" her. J. told him that she did not want to do that, and defendant responded: "Oh, come on." He told her "[t]o just do it."

On the next occasion, defendant again promised a gift for J. Once J. entered the bedroom, defendant took off her bra and panties, and held her "like a baby." She protested, but defendant told her: "Just do it." Defendant pushed her onto the bed, pulled her in, and licked her vaginal area. Defendant took off his clothes and laid himself beside her. J. was scared and felt weird. Defendant began "humping [her] with his penis." He then spread her legs while she attempted to keep them together. Defendant penetrated her vagina with his fingers. Defendant's fingers hurt her when he moved them in and out of her vagina. He then put his penis "a little bit" into her vagina.

---

[2] We refer to the victim as "J." or "the victim" to protect her identity.

Defendant put lubricant onto his penis and on J.'s anus. He told her "that this is going to make [her] like slip and it's not going to hurt . . . ." J. began to cry and defendant said, "Don't cry, it's going to be okay. Don't cry." Defendant positioned J. on her hands and knees and penetrated her anus with his penis. She told him that it hurt, "[i]t hurt bad," and pushed him away. Defendant then got on top of her and ejaculated onto her stomach.

Once J. got home, she took a shower. She saw blood when she had a bowel movement and urinated. Although she told her mother about the bleeding, she did not tell her about being molested because defendant had threatened to kill her and her mother if she told anyone. J. believed defendant would carry out the threat.

When J. was 13 years old, defendant took her to a bedroom with a king-size bed. Defendant removed J.'s clothes and carried her to the bed. He told her to relax and licked her vaginal area.

J. babysat for defendant over the course of approximately six months. "Most of the times" that she babysat, defendant sexually molested her. J. estimated that defendant molested her more than 20 times while she was 12 and 13 years old. When she told him not to do it, he would force her. Every time defendant molested her, he would lock the door to the bedroom. On occasions when J. did not want to take off her clothes, defendant would threaten her and she would get scared. During the 20 or more times that defendant molested her, he would fondle her breasts, insert his penis into her vagina and anus, ejaculate on her stomach or genitals, and then tell her to "go, like, wash it off." Whenever defendant put his penis into her vagina, J. would try to push him away. Twice, defendant also inserted his fingers into her vagina. During the molestations, defendant often licked her vaginal area. She was safe from defendant only on the weekends.

Toward the end of the molestations, defendant showed J. a pornographic video in which women were performing oral sex. While watching the video, defendant lay on top of J. and rubbed her breasts and genitals. Defendant told J. "that whatever they are doing on the video, do it like to him." J. said she did not want to do that. Defendant forced her to touch his penis with her hand.

On another occasion, defendant showed J. pornographic magazines in which women were depicted performing oral sex on men. Defendant told her to "do the same thing." She refused.

After the last time J. returned from defendant's house, she returned from the bathroom and told her mother she was bleeding after a bowel movement. Her mother responded that she might simply be constipated.

When J. was almost 14 years old, she moved to another town with her mother and siblings. J.'s mother testified that defendant called every night and asked to talk with J. After the telephone calls, J. was always mad.

On one occasion when defendant called J., he asked if she had told anyone about the molestations. J. became scared and told him that she had not. That night, J. was upset and unable to eat dinner. The next day, A.S.—an acquaintance whom J. referred to as her "Aunt"—took J. aside and asked what was wrong. J. burst into tears and told A.S. about the molestations. J. then told her mother. J.'s mother called the police department in Manteca and reported the molestations.

Pursuant to a search warrant, Manteca Police Department detectives searched defendant's residence. In the headboard of a bed in the master bedroom, the officers found six pornographic magazines. Pornographic videos were found in a closet. One of the detectives found a tube of lubricant under the bed in the master bedroom.

David Love serves as director of a counseling service providing child abuse treatment programs. Love testified as an expert on child sexual abuse accommodation syndrome (CSAAS). Love explained that CSAAS is the product of clinical observations of sexually abused children and describes five behaviors typically manifested by such victims. These behaviors are (1) secrecy, (2) helplessness, (3) entrapment and accommodation, (4) delayed, unconvincing disclosure, and (5) retraction. On cross-examination, Love acknowledged that CSAAS is not a diagnostic tool that determines whether a child has been sexually molested.

### Defense Evidence

The defense called witnesses who testified about his good character. These character witnesses included defendant's daughter, the husband of defendant's cousin, defendant's uncle, four longtime friends, three of defendant's nieces, one distant relative, a friend of defendant's daughter, and an acquaintance from religious ceremonies attended by defendant. Each of these witnesses testified that they did not believe defendant was capable of committing the charged offenses, and many emphasized defendant's role as a preacher.

Several of the defense witnesses also testified that J.'s mother had a vindictive nature and threatened to harm defendant for helping her husband. J.'s mother made threats at a time when she was seeking court protection based on her allegations of domestic violence by her husband. An uncle of J.'s testified that J. was not an honest person because she would do whatever her mother instructed.

The defense also introduced the testimony of Baljit Atwal, who has a doctorate in psychology and specializes in sex offender risk assessments. Dr. Atwal conducted an evaluation of defendant at the request of the defense. In doing so, Dr. Atwal reviewed documents in the case and met with defendant for a total of six hours. Dr. Atwal administered several psychological tests even though she was doubtful that the tests would be applicable "[b]ecause [defendant's] cultural background doesn't fit the norms or the group that these tests were developed on." The result of the tests was inconclusive.

Dr. Atwal then consulted research literature on risk factors indicating propensity to commit sex offenses against children. As a result of her literature review, she concluded that defendant did not exhibit any of the factors associated with child molesters. Specifically, defendant did not have a deviant sexual history; a persistent sexual interest in children; a high psychopathy; emotional or psychological problems; accusations of molestation by multiple victims; or a history of substance abuse. Instead, defendant "appeared very genuine" and distressed about the charges. Defendant also exhibited concern for the impact of the charges on his family. He was successful in his business and had a stable family. Based on these factors, Dr. Atwal concluded that defendant did not have a propensity to commit sex offenses.

### Rebuttal Evidence

The prosecution called Kalyani Kumar, a distant relative of defendant's. Kumar had not seen defendant for 10 years before she visited him in jail in 2009. Kumar denied ever having a sexual relationship with defendant, but admitted that she had written him a letter asking: "Do you or did you ever regret loving me or making love to me?" In that letter, Kumar also told defendant that "he made [her] a woman from an innocent girl . . . ." In another letter Kumar referred to defendant as her first husband. Kumar testified that she wrote "some sexual things to him" because she wanted to see if he could have committed the offenses with which he was charged. After Kumar's second visit to jail, defendant refused to see her again.

### DISCUSSION

### I–VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 641.

## VII

### *Sentences Consecutive to Count One*

Defendant contends the trial court erred in imposing sentences for counts two, three, and four (§ 269) that are consecutive to count one (§ 288, subd. (b)) because count one was not committed "on the same occasion" as the other molestations. In so arguing, defendant acknowledges that he urges "an anomalous result" in asking us to construe section 667.6, subdivision (c), to disallow offenses committed against the same victim on separate occasions from being subject to consecutive sentences. We are not persuaded.

We begin by addressing the Attorney General's assertion that this issue was not preserved for review because defendant's trial attorney failed to object to the consecutive sentences at sentencing. We conclude that this issue is cognizable on appeal. Defendant does not base this claim on the contention that some procedural irregularity or failure to state a finding on the record requires correction. (See *People v. Scott* (1994) 9 Cal.4th 331, 353 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) Instead, he argues that section 667.6 disallows the sentences imposed for counts one through four. Thus, defendant's argument raises a claim of unauthorized sentence that is reviewable even in the absence of an objection in the trial court. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1113 [6 Cal.Rptr.3d 723, 79 P.3d 1030]; *People v. Smith* (2001) 24 Cal.4th 849, 852 [102 Cal.Rptr.2d 731, 14 P.3d 942].) Accordingly, we consider the issue on the merits.

Defendant argues that subdivision (c) of section 667.6 prevents consecutive sentences for his conviction of counts one through four (§§ 288, subd. (b), 269). In pertinent part, subdivision (c) of section 667.6 states: "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) *if the crimes involve the same victim on the same occasion.* A term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e). If the term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time the person otherwise would have been released from imprisonment." (Italics added.)

Defendant contends the italicized portion of section 667.6 disallows consecutive sentences for offenses against the same victim on *separate* occasions. He reasons that "[t]here was no statutory authorization to run Count 1 full term consecutive. Count 5 was chosen as the base term, therefore absent a statutory exception all other determinate counts must run one-third consecutive, or concurrent." In support of his argument, defendant relies on this

court's decision in *People v. Goodliffe* (2009) 177 Cal.App.4th 723 [99 Cal.Rptr.3d 385] (*Goodliffe*).

In *Goodliffe*, this court examined the amendment of subdivision (c) of section 667.6 when the voters adopted Jessica's Law by initiative in 2006. (*Goodliffe, supra,* 177 Cal.App.4th at p. 726.) *Goodliffe* involved a defendant who committed only one offense specified in subdivision (e) of section 667.6—namely, a forcible lewd act on a child as defined by section 288, subdivision (b). (*Goodliffe, supra,* at p. 725.) The remaining convictions in *Goodliffe* were for nonforcible molestations of the same victim. (*Ibid.*) The People conceded that "the other crimes of which he was convicted did not involve the same victim on the same occasion." (*Id.* at p. 726.)

■ This court concluded that the language of section 667.6, subdivision (c), disallowed consecutive sentences because the other, nonforcible convictions did not occur on the same occasion as statutorily required. (*Goodliffe, supra,* 177 Cal.App.4th at p. 726.) As we explained, the defendant was "not subject to subdivision (c) because the other crimes of which he was convicted did not involve *the same victim on the same occasion.*" (*Ibid.,* italics added.) In so holding, we noted that the result would be different for a defendant convicted of multiple forcible sex offenses set forth in subdivision (e) of section 667.6. Specifically, we stated that "subdivision (d) mandates a trial court to impose '[a] full, separate, and consecutive term . . . for each violation of an offense specified in subdivision (e) *if the crimes involve separate victims or involve the same victim on separate occasions.'* . . . Unlike subdivision (c), *this mandatory sentencing scheme applies only when a defendant stands convicted of more than one offense specified in subdivision* (e). (*People v. Jones* (1988) 46 Cal.3d 585, 594, fn. 5, 595–596 [250 Cal.Rptr. 635, 758 P.2d 1165] . . . .) Defendant was convicted of but one offense specified in subdivision (e), a forcible lewd and lascivious act upon a child under the age of 14. (§ 288, subd. (b)(1) . . . .) (§ 667.6, subd. (e)(5).) For that reason he is not subject to the mandatory consecutive sentencing scheme in subdivision (d)." (*Goodliffe, supra,* 177 Cal.App.4th at p. 727, fn. 10, second italics added.)

In contrast to *Goodliffe*, defendant in this case was convicted of three counts of violating section 269 and one count of violating section 288, subdivision (b)—each committed against the same victim. The Attorney General asserts, "Each of the violations listed in section 269 are [*sic*] also included in section 667.6, subdivision (e)." Our review of the relevant statutes supports this assertion.

Subdivision (a) of section 269, of which defendant was thrice convicted, provides: "(a) Any person who commits any of the following acts upon a

child who is under 14 years of age and seven or more years younger than the person is guilty of aggravated sexual assault of a child: [¶] (1) Rape, in violation of paragraph (2) or (6) of subdivision (a) of Section 261. [¶] (2) Rape or sexual penetration, in concert, in violation of Section 264.1. [¶] (3) Sodomy, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of Section 286. [¶] (4) Oral copulation, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of Section 288a. [¶] (5) Sexual penetration, in violation of subdivision (a) of Section 289."

■ Each of these offenses enumerated in subdivision (a) of section 269 is also included in subdivision (e) of section 667.6, which states in pertinent part: "(e) This section shall apply to the following offenses: [¶] (1) Rape, in violation of paragraph (2), (3), (6), or (7) of subdivision (a) of Section 261. [¶] (2) Spousal rape, in violation of paragraph (1), (4), or (5) of subdivision (a) of Section 262. [¶] (3) Rape, spousal rape, or sexual penetration, in concert, in violation of Section 264.1. [¶] (4) Sodomy, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d) or (k), of Section 286. [¶] (5) Lewd or lascivious act, in violation of subdivision (b) of Section 288. [¶] (6) Continuous sexual abuse of a child, in violation of Section 288.5. (7) Oral copulation, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d) or (k), of Section 288a. [¶] (8) Sexual penetration, in violation of subdivision (a) or (g) of Section 289."

■ Each of defendant's offenses in counts one through four is included in section 667.6, subdivision (e). Consequently, section 667.6 applies to defendant's conviction of section 288, subdivision (b), and three convictions of section 269, thus requiring mandatory consecutive sentences for each of defendant's four forcible sex offenses. (See § 667.6, subd. (d) [requiring "[a] full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions"]; see also *id.*, subd. (c) [providing that "[a] term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e)"].) *Goodliffe*, having addressed an instance of only one forcible sex offense described by section 667.6, subdivision (e), does not prevent the mandatory consecutive sentencing requirement of subdivision (d) from applying to the multiple forcible sex offense convictions in this case. Accordingly, the trial court did not err in imposing sentences for counts two through four (§ 269, subd. (a)) that were consecutive to the sentence imposed for count one (§ 288, subd. (b)).

## DISPOSITION

The judgment is affirmed.

Raye, P. J., and Nicholson, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 13, 2012, S201597.